ZOSEL, APPELLANT, *v.* KOHRS ET AL., RESPONDENTS.

(No. 5,639.)

(Submitted February 21, 1925. Decided March 23, 1925.)

[234 Pac. 1089.]

*Waters and Water Rights—Acquisition by Prescription—Adverse User—Parties Bound by Decree Until Modified.*

Water Rights—Acquisition by Prescription.
  1.  A water right may be acquired by prescription.
Same—Adjudicated Rights—Alleged Adverse User by Party to Prior Action—Notice to Other Parties in Complaint—Insufficiency.
  2.  Defendants in an action to establish a water right by adverse user in a stream the waters of which had in a prior action been adjudicated between the parties were warranted in assuming that plaintiff (the successor of one of such parties) took the water in conformity with the decretal provisions and not in defiance thereof, until expressly notified that plaintiff repudiated the decree and intended thereafter to take the water in hostility of their rights; hence failure to allege that each of the defendants had been so notified at the time the alleged adverse right was initiated rendered the complaint insufficient.
Same—What Does not Constitute Adverse User.
  3.  The use of water by a subsequent appropriator is not adverse to the right of a prior appropriator unless such use deprives the latter of it when he has actual need of it.
Same—Adverse User—How Initiated.
  4.  An adverse use of the waters of a stream can be initiated only by taking that which by priority belongs to another when the water becomes so scarce that all of the parties cannot be supplied.
Same.
  5.  An adverse user of water cannot be initiated until the owner of the superior right is deprived of its use in such a substantial manner as to notify him that his right is being invaded, and to entitle plaintiff in an action to establish a water right by adverse user he must show that during the entire statutory period his invasion of the defendant's right was such as to give him a cause of action against plaintiff.
Pleading—Pleader Bound by Special Allegations Germane to General Averments.
  6.  Where a pleader supplements his general allegations by pleading facts relative or germane thereto which weaken or destroy the former, he is bound by the latter.
Water Rights—Parties Bound by Decree Until Modified.
  7.  Until a decree in a water right suit is modified, the parties thereto are bound by it; hence where a creek had been adjudged

---

  1.  Prescriptive title to water, see note in 93 **Am. St. Rep.** 711.

a tributary of another stream, one of the parties was precluded from alleging in his complaint in an action to establish a water right by prescription that the waters in the creek, if not taken by him, would sink and be lost during a certain part of the year before reaching the stream and therefore during that time were not tributary to the stream, and evidence in support of the allegation would be inadmissible.

'Appeal from District Court, Powell County, in the Third Judicial District; Ben B. Law, Judge of the Ninth District, presiding.

ACTION by Louise Zosel against Conrad Kohrs and others. From a judgment of dismissal, plaintiff appeals. Affirmed.

Mr. Edward Horsky, for Appellant, submitted a brief and argued the cause orally.

The court erred in holding that the complaint did not state a cause of action. It was claimed by defendants ''that the complaint on its face shows all of the matters therein alleged are fully adjudicated by virtue of the decree set forth and alleged in the complaint, and that the alleged cause of action is *res adjudicata.''* This contention is readily disposed of by the simple observation that the complaint sets forth two causes of action for prescriptive title to two water rights by adverse use, each commencing after and subsequent to the rendition of said decree. The complaint expressly alleges adverse user for upward of ten years, to wit, ever since June 3, 1906, whereas said former decree was rendered March 2, 1906, and said former decree did not and could not, of course, in advance adjudicate a cause of action which accrued subsequent to the rendition of the decree, to wit, two prescriptive rights by adverse user for the statutory period.

Defendants' contention that the plaintiff does not come into court with clean hands has no application as against a plea of title by prescription through open, notorious, continuous and adverse user. In Montana one may obtain title to water right by adverse use. (*State* v. *Quantic,* 37 Mont. 32, 54,

94 Pac. 491; *Ryan* v. *Quinlan,* 45 Mont. 521, 124 Pac. 512; *Smith* v. *Duff,* 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981; *Featherman* v. *Hennessy,* 42 Mont. 535, 113 Pac. 751; *Custer Con. Mines Co.* v. *City of Helena,* 52 Mont. 35, 41; 156 Pac. 1090.)

In the trial court only one of the defendants' counsel sought to invoke this doctrine, citing 21 C. J. 183, which holds that said maxim operates so as to exclude aid or deny relief to or from conduct, which "is fraudulent, illegal or unconscionable." That open, notorious, continuous and adverse user, which is expressly authorized by the Montana statute and practically every other jurisdiction in the Union, does not come within said rule requires no argument; and the case of *McGehee* v. *Curran,* 49 Cal. App. 186, 193 Pac. 277, was also cited on this point, but as that was a case involving an alleged fraudulently obtained judgment and as no fraud is either pleaded or involved in the case at bar, its inapplicability is manifest at a glance.

It was next claimed that the complaint does not show that the plaintiff used the water when all of the prior decreed rights had need for the same and when the owners of the prior decreed rights had attempted ineffectually to use the same, but no decision was cited, and, under the rules for pleading adverse use for the statutory period, the averment of the ultimate fact is sufficient. (*Ryan* v. *Quinlan, supra; State* v. *Quantic, supra.*)

Another ground, that at all times alleged during the prescription period, the plaintiff was using only the same amount decreed to her, is not well founded, in that the establishment of a right by adverse user is dependent not alone upon using a greater or lesser amount than awarded in the decree, but is also dependent upon other essential, evidentiary features; such as the manner, method, nature of use, time during which used, kind and extent of use, when, where, length of use, whether at times when others needed it, *etc.*

[72 Mont. 564.]

Defendant's seventh ground was that the complaint "shows on its face that any alleged rights acquired by the plaintiff were in violation of an injunction of this court and in contempt of a decree of this court; and, therefore, the parties are deemed to be in the same status that they enjoyed at the time the decree was made, entered and given, and that the parties hereto should be put *in status quo.*" There are two precedents and two decisions of our supreme court holding squarely against defendants' seventh contention. (*State* v. *Quantic, supra; Ryan* v. *Quinlan, supra.*)

In Montana one may obtain title to water right by adverse use of a decreed water right. (See cases first above cited.) Other cases and authorities are as follows: *Faulkner* v. *Rondoni,* 104 Cal. 140, 37 Pac. 883; *Yankee Jim's Union Water Co.* v. *Crary,* 25 Cal. 504, 85 Am. Dec. 145; *Hammond* v. *Zehner,* 23 Barb. (N. Y.) 473; Wiel on Water Rights, 2d. ed. 278, p. 370; Long on Irrigation, sec. 88. Substantive property rights cannot be adjudicated through the medium of contempt proceedings. (*Ryan* v. *Quinlan, supra.*)

Defendants' next ground is "that the maintenance of this suit would permit the making of a collateral attack upon the former decree." The instant case is not "a collateral attack," but a direct proceeding—an independent suit for the establishment of property rights, and has been expressly held by our supreme court to be the proper procedure. (*State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 581, 185 Pac. 1112; *Ryan* v. *Quinlan, supra; State* v. *Quantic, supra.*)

*Messrs. Scharnikow & Paul* and *Mr. S. P. Wilson,* for certain Respondents, submitted a brief; *Mr. W. J. Paul* argued the cause orally.

After pleading the decree of 1906 and plaintiff's rights under it, she pleads her violation of its terms for the ten-year period. She has pleaded an estoppel as effectually, and more so, than defendants could have done. (*Boulder etc. Ditch Co.* v. *Lower Boulder Ditch Co.,* 22 Colo. 115, 43 Pac.

540; *Handy Ditch Co.* v. *Southside Ditch Co.,* 26 Colo. 333, 58 Pac. 30; *Consolidated Home etc. R. Co.* v. *Loveland etc. Land Co.,* 27 Colo. 521, 62 Pac. 364; *Larimer County Canal etc. Co.* v. *Pleasant Valley etc. Canal Co.,* 55 Colo. 138, 133 Pac. 749; *Fredericks* v. *Davis,* 3 Mont. 251; *Butte Hardware Co.* v. *Cobban,* 13 Mont. 351, 34 Pac. 24; *Goodell* v. *Sanford,* 31 Mont. 163, 77 Pac. 522; *Helena etc. R. Co.* v. *Lynch,* 25 Mont. 497, 65 Pac. 919; *Flannery* v. *Campbell,* 30 Mont. 172, 75 Pac. 1109; 2 Kinney on Irrigation, 2d ed., p. 2031, and cases cited in footnote.)

The complaint does not recite facts sufficient to entitle plaintiff to maintain her alleged plea of adverse user. (*Talbott* v. *Butte City Water Co.,* 29 Mont. 17, 73 Pac. 1111; *Featherman* v. *Hennessy,* 45 Mont. 535, 113 Pac. 751; *Norman* v. *Corbley,* 32 Mont. 195, 79 Pac. 1059; *Smith* v. *Duff,* 39 Mont. 374, 378, 133 Am. St. Rep. 582, 102 Pac. 981; *Spring. Creek Irr. Co.* v. *Zollinger,* 58 Utah, 90, 197 Pac. 737; Long on Irrigation, sec. 90.)

The complaint recites an alleged cause of action which plaintiff is prohibited from maintaining by the express provisions of the statutes of the state of Montana and plaintiff's alleged cause of action is directly contrary to the laws of the state of Montana. (See secs. 7128 and 7129, Rev. Codes 1921; *Lokowich* v. *City of Helena,* 46 Mont. 575, 129 Pac. 1063; *German Ditch etc. Co.* v. *Platte Valley Irr. Co.,* 67 Colo. 390, 178 Pac. 896; *Bieser* v. *Stoddard,* 73 Colo. 554, 216 Pac. 707, 708; *Ft. Lyon Canal Co.* v. *Arkansas Valley etc. Land Co.,* 39 Colo. 332, 90 Pac. 1023.)

The complaint recites facts showing that the matters therein contained are *res adjudicata.* The cases cited in paragraph 1 of this argument on the question of estoppel are applicable and pertinent here. (See, also, *Haskins* v. *Somerset Coal Co.,* 219 Pa. St. 373, 123 Am. St. Rep. 667, 68 Atl. 843; *In re Evans,* 42 Utah, 282, 130 Pac. 217; *Ryan* v. *Kingsberry,* 89 Ga. 228, 15 S. E. 302; *Osterhoudt* v. *Prudential Ins. Co.,* 159 App. Div. 291, 144 N. Y. Supp. 193.)

*Messrs. Keeley & Keeley,* for Respondents Larabie Stock Company, Conrad Kohrs, N. W. Bielenberg, Kohrs & Bielenberg Land & Livestock Company and Powell County, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

This is an equity suit and the plaintiff does not come into court with clean hands. Were the court to permit the maintenance or trial of this case, it would be permitting the plaintiff to take advantage of her own wrong. At all times, during the alleged adverse use, plaintiff alleges facts showing that she was actually in contempt of the very court whose equitable intervention in her behalf she now seeks. Plaintiff cannot prevail, except upon a showing of her own illegal acts and contemptuous acts. (21 C. J. 180–192; *Rogers* v. *Bruce,* 69 Colo. 298, 193 Pac. 1097; *Nester* v. *Continental Brewing Co.,* 161 Pa. St. 473, 41 Am. St. Rep. 894, 898, 24 L. R. A. 247, 29 Atl. 102; *Nebraska Tel. Co.* v. *Western etc. Tel. Co.,* 68 Neb. 772, 95 N. W. 18.)

The complaint fails to show that the plaintiff used the water when all of the prior decreed rights had need for the same, or when the owners of the prior decreed rights attempted ineffectually to use it. (*Pabst* v. *Finmand,* 190 Cal. 124, 211 Pac. 11; *Smith* v. *Hope Mining Co.,* 18 Mont. 432; *Talbot* v. *Butte City Water Co.,* 29 Mont. 17, 73 Pac. 1111; *Featherman* v. *Hennessy,* 42 Mont. 535, 113 Pac. 751; *Spring Creek Irr. Co.* v. *Zollinger,* 58 Utah, 90, 197 Pac. 737.) Prescription cannot run against one having all the water he needs. (*Norman* v. *Corbley,* 32 Mont. 195, 79 Pac. 1059; *Morrison* v. *Linn,* 50 Mont. 396, 147 Pac. 166; *Smith* v. *Duff,* 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981.)

The allegations of the amended complaint are self-destructive. Adverse possession of Baggs Creek is claimed, and also that Baggs Creek is not a tributary of Cottonwood Creek. These two foregoing claims in the amended complaint are inconsistent and self-destructive because: 1. If Baggs Creek is not a tributary of Cottonwood Creek, there could be no ad-

verse user of possession as against users of water out of Cotton-
wood Creek. 2. By alleging adverse possession against the
water users of Cottonwood Creek, plaintiff admits that Baggs
Creek is a tributary of Cottonwood Creek. (*Lowry* v. *Carrier,*
55 Mont. 392, 177 Pac. 756; *Bieser* v. *Stoddard,* 73 Colo. 554,
216 Pac. 707.) The use of water from a stream not a tribu-
tary to a stream used by another appropriator is never adverse.
(*Harrington* v. *Demaris,* 46 Or. 111, 1 L. R. A. (n. s.) 756,
77 Pac. 603, 82 Pac. 14.)

MR. CHIEF JUSTICE CALLAWAY delivered the opinion
of the court.

This is an appeal from a judgment dismissing plaintiff's
action upon the ground that her complaint does not state facts
sufficient to constitute a cause of action, and whether it does
is the sole question presented. In her complaint she alleges
in substance that she is and ever since prior to March 2, 1906,
has been the owner of described land in Powell county situ-
ated near the confluence of Cottonwood and Baggs Creeks,
together with two certain water rights decreed to her hus-
band, William Zosel, by a judgment bearing date March 2,
1906, and the ditches appurtenant to the lands; that approxi-
mately 125 acres of the land are arid, but valuable for the
production of hay, grain, grass, vegetables and fruit, which
can be grown thereon with the aid of artificial irrigation, but
not otherwise; that at all times since March 2, 1906, she has
been raising such crops on the land, and during all of that
time has used the waters from Cottonwood and Baggs Creeks
to irrigate the same and for domestic purposes; that without
the use and enjoyment of the waters of said creeks plaintiff
will be deprived of any water for domestic purposes.

She next alleges that on March 2, 1906, in an .action in
the district court of Powell county wherein Conrad Kohrs and
others were plaintiffs, and F. H. Albee and others including
William Zosel were defendants, a judgment was duly made,
given and entered (the judgment being set forth at length)

which · has never been appealed from, modified, reversed or
set aside; that Baggs Creek is a tributary to Cottonwood Creek
for a short period in the spring of the year; that both of the
creeks flow in a westerly and northwesterly direction, and
that the confluence of Baggs Creek with Cottonwood Creek
is about one-eighth of a mile below her land; that these
lands are situated so that the same can and have been suffi-
ciently irrigated by waters taken from each of said creeks;
that by the judgment her husband, William Zosel, was ad-
judged and decreed the use, enjoyment and possession of the
waters of Cottonwood Creek and its tributaries for all domestic
and beneficial purposes in the following amounts, namely, 100
inches of the waters of Baggs Creek, as of date March 1,
1883, and 75 inches of Cottonwood Creek, as of date March 1,
1884, and that she is the successor in interest of William Zosel
in said rights; that the defendants and their predecessors in
interest were adjudged and decreed to have the use and en-
joyment of 1,926 inches of the waters of Cottonwood. Creek
and its tributaries as of dates prior to the first day of March,
1883, and 400 inches of dates subsequent to the first day of
March, 1884; that the entire amount of water decreed was
2,401 inches, and the amount flowing in the creeks during the
flood or high-water period in the spring and early summer,
namely, during the months of March, April, May and the 1st
of June of each year, has been in excess of the amounts actually
used by said plaintiff and defendants; that during these months
of each year a large amount of water flows past the ditches
of the parties and goes to waste, and that during the remaining
months of the irrigating season of each year, namely, the latter
part of June, July, August, September and October, the water
flowing in the creeks has been less than the 1,926 inches
awarded to defendants and their predecessors in interest as of
dates prior to the first day of March, 1883 (that being the
earliest water right decreed to plaintiff); and unless plaintiff
had diverted and used some of the waters decreed to defendants
as of dates prior to her own rights, during all of the years

since long prior to 1906, except during the high-water·period of each year, she would have been without water for irrigating her said lands and for domestic uses.

·She further avers that ever since the second day of March, 1906, she has kept and maintained her ditches which tap Cottonwood and Baggs Creeks, "being the same William Zosel ditches mentioned in the judgment of March 2, 1906," and that the same have ever been of sufficient size and capacity to convey 100 inches of water from Baggs Creek and 75 inches from Cottonwood; and that during the dry summer season of each and every year the waters of Baggs Creek decrease in volume "until during the time of such dry seasons there is less than 100 inches of water flowing in said creek at the point where plaintiff's said ditch taps said creek."

She then says that commencing with the third day of June, 1906, and at all times since and during each and every year commencing with the spring of each year as soon as weather conditions have permitted, she has "diverted from said creeks, through her said ditches and to and upon her said lands, and openly, notoriously and adversely, used upon her said land by means of said ditches all the waters from said creeks which said ditches would and do convey, namely, 100 inches of the water from said Baggs Creek, and 75 inches from said Cottonwood Creek, and continued to so divert and convey as aforesaid said amounts of water through said ditches during the entire irrigating season of each year, except at such times during the dry summer season when the said volume of water in said Baggs Creek is less than 100 inches''; that she begins to so use the waters during the latter part of March or the first part of April of each year, and continues to use them continuously and without interruption until the end of the irrigating season in the month of September or October of each and every year, and after that she employs the water for household and domestic purposes "and has so diverted and so used said waters at all times during each and every year since said third day of June, 1906''; that the ditch through

which she diverts water from Baggs Creek taps that creek
at a distance of about one and one-fourth miles above the
confluence of Baggs Creek and Cottonwood Creek, and none of
the ditches belonging to the defendants or either of them tap
Baggs Creek between the head of plaintiff's ditch and the con-
fluence of said creeks, except the ditches of the defendant Pierce;
that at certain times during the dry season of each year the
water flowing in Baggs Creek at the point where plaintiff's
ditch taps the creek recedes to 50 inches or less at plaintiff's
point of diversion, and all of that water, if allowed to flow
uninterrupted, sinks and disappears before it reaches Cotton-
wood Creek, and is forever lost to the defendants and each of
them.

Plaintiff then avers that her use of the waters aforesaid is,
and at all times since said third day of June, 1906, has been,
open, notorious, peaceable, continuous, exclusive and adverse
to the claim of said defendants and each of them, and that on
or about the —— day of July, 1906, plaintiff "gave notice
to and during all of said time subsequent to said last-mentioned
date, defendants and each and all of them had actual knowl-
edge of plaintiff's use of said waters, and that said use by
plaintiff has at all of said times been under claim of right,
without interruption or interference from any of said defend-
ants or anyone else, save and except during the year 1919
as hereinafter set forth."

She then relates that in June, 1919, the duly appointed,
qualified and acting water commissioner for that year, in
the action wherein said judgment was rendered, closed the
ditches of the plaintiff, and that her husband, William Zosel,
opened the ditches; that thereupon Zosel was charged with
contempt by the water commissioner and in the trial follow-
ing William Zosel was adjudged guilty of contempt and
was sentenced to pay a fine of $50, which was affirmed on ap-
peal, and that Zosel paid the fine. She alleges that the de-
fendants threaten to and will prevent her from using the
waters she claims during the dry months of each irrigating

season unless restrained by an order of the court, and that she will be subjecting herself to contempt of court if she uses or attempts to use water, unless she is granted the relief prayed for.

She prays that she be adjudged and decreed to have the use, benefit and possession of 100 inches of the waters of Baggs Creek and 75 inches of the waters of Cottonwood Creek, prior and superior to the rights of the defendants or any of them, and for appropriate injunctive relief against the defendants.

The situation presented by the complaint is unusual, to say the least. While plaintiff was not a party to the action in which the decree was rendered, she says she was the owner of the lands, and the water rights which were awarded to William Zosel, her husband, when the decree was rendered; she likewise alleges that she is the successor in interest of her husband. That at all times she has been bound by the terms of the decree does not seem to admit of doubt. (*State ex rel. Pool* v. *District Court*, 34 Mont. 259, 86 Pac. 798.)

She does not allege that she has ever taken a greater quantity of water than was awarded William Zosel. Indeed, it does not appear that her ditches were capable of carrying more water than the decree gave him. Her position in effect is that she took that quantity of water under the decree when the creek supplied all rights in full, but when the creek subsided she took her full quantity just the same; she did so at all times during each and every year since the third day of June, 1906. If the plaintiff, in alleging her acquisition by prescription of the right to use the waters she claims, had been content to set forth merely the formal allegations—the ultimate facts—upon which a right acquired by prescription rests—such, for instance, as would be alleged in the ordinary action where real estate claimed by prescription is involved—undoubtedly her pleading would be deemed sufficient. That a water right may be ac- [1] quired by prescription will be conceded, (*State* v. *Quantic*, 37 Mont. 32, 94 Pac. 491.)

But the pleader did not follow the course above indicated. He [2] preferred to set forth in detail the facts upon which the ultimate fact of plaintiff's ownership is alleged to rest. Presumably he did so to the end that the pleadings in the case, disclosing the fact conditions obtaining, might narrow the issue to one of law, or at most to a mixed question of law and fact. So in the complaint he set forth the decree in full and that plaintiff in the first instance was bound by its terms. He recognized that all parties and privies thereto upon its face were bound by its provisions and that each party and privy thereto presumably took the water from the streams adjudicated comformably to the decretal provisions. The defendants were warranted in assuming that the plaintiff, in taking the water from the streams, did so pursuant to the provisions of the decree unless she gave them express notice that she repudiated the decree and intended thereafter to take the water from the streams in defiance of the decree and in hostility to their rights. (2 C. J. 163; *Root* v. *Woolworth,* 150 U. S. 401, 37 L. Ed. 1123, 14 Sup. Ct. Rep. 136 [see, also, Rose's U. S. Notes] ; *Abrams* v. *Taintor,* 76 Neb. 109, 107 N. W. 225; *Dupont* v. *Charleston Bridge Co.,* 65 S. C. 524, 44 S. E. 86. Compare *Roda* v. *Best,* 68 Mont. 205, 217 Pac. 669.)

Now what does plaintiff's complaint show respecting this feature of the case? That on or about the —— day of July, 1906, she ''gave notice to and during all of said time subsequent to said last-mentioned date, defendants and each and all of them had actual knowledge of plaintiff's use of said waters, and that said use by plaintiff has at all of said times been under claim of right without any interruption or interference from any of said defendants, or anyone else'' except during the year 1919. To whom she gave the notice does not appear. And not under any possible construction of the language employed can it be said that plaintiff has pleaded that she gave any notice to each and all of the defendants on or about the third day of July, 1906, that she had repudiated the decree, that she intended to take water in defiance of it, or that she intended to take water

properly belonging to the defendants, or either of them. She does not state what character of notice she gave. Was it actual or constructive? This particular allegation is not only faulty but unintelligible.

Her allegation that each and all of the defendants at all times had actual knowledge of her use of the waters does not avail her for the reason that in the absence of express notice given by her to them they had the right to presume that she was taking the water in conformity to the provisions of the decree; and in view of this presumption, inasmuch as she was assuming to plead all the facts (rather than the mere ultimate facts) showing her title by prescription, it was incumbent upon her to show that she took the water when the defendants were needing it; that by doing as she did she invaded the rights of the defendants, or some of them at least. If a defendant knew the plaintiff was using water contrary to the decree, unless he knew also that his own rights were being invaded, he could not complain; even if the plaintiff were taking water which she had no right to take, a defendant who did not then need it did not have any cause to complain. Again, plaintiff's statement that [3] she filled her ditches at the beginning of the summer and kept them full for the entire time may be taken as true and yet she may not have used a drop of water contrary to law, for if water were running in the creek which no one needed, anyone might take and make use of it. She does not allege directly, or even inferentially, that at any time when she made use of the water she deprived any prior appropriator of water when he needed it.

The use of water by a subsequent appropriator cannot be said [4] to be adverse to the right of a prior appropriator, unless such use deprives the prior appropriator of it when he has actual need of it. To take the water when the prior appropriator has no use for it does not invade any right of his and cannot even initiate any claim adverse to him. (*Talbott* v. *Butte City Water Co.,* 29 Mont. 17, 73 Pac. 1111; *Norman* v. *Corbley,* 32 Mont. 195, 79 Pac. 1059.)

When there was sufficient water in the creeks to supply the actual needs of prior appropriators there could be no such thing as adverse use by plaintiff. Each party to the decree is entitled to the use of the water and it is only when it becomes so scarce that all of the parties cannot be supplied that an appropriator by taking that which by priority belongs to another can be said to initate an adverse use. (*Egan* v. *Estranda*, 6 Ariz. 248, 56 Pac. 721; *Anaheim Water Co.* v. *Tropic Water Co.*, 64 Cal. 185, 30 Pac. 623.)

Under our statute (sec. 7097, Rev. Codes 1921) and by the terms of the decree, the parties were required to turn back into the creek all water which they were not actually using for some useful or beneficial purpose. The evident reason for this requirement is to make the water available to subsequent appropriators, to the end that the water may serve its highest duty. The plaintiff shows that appropriators prior to her were entitled to use 1,926 inches of water, but she does not allege that it was necessary for the prior appropriators to use their respective amounts all the time, and it is not probable that it was necessary for them to do so. It may be that except in the year 1919 the prior appropriators were alternately using their waters in such fashion that at all times they had sufficient for their needs.

An adverse use cannot be initiated until the owner of the [5] superior right is deprived of its use in such a substantial manner as to notify him that his right is being invaded. (*Smith* v. *Duff*, 39 Mont. 374, 133 Am. St. Rep. 582, 102 Pac. 981.)

In order for plaintiff to prevail she would have to show that during the entire statutory period her invasion of the rights of the defendants was such as to give them or some of them a cause of action against her. (*Smith* v. *Duff, supra; Chessman* v. *Hale*, 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254; *Boehler* v. *Boyer, ante,* p. 472, 234 Pac. 1086.)

If a pleader, not content to rest his case upon general allega-[6] tions, sees fit to supplement those allegations by pleading

facts relative or germane thereto which serve to weaken or destroy the general allegations he must abide what he has done. He is not then in a position to ask the court to disregard his special allegations in order that the general ones may sustain his action.

When the plaintiff pleaded the judgment which when rendered admittedly bound her, to escape the force of its continued operation it was incumbent upon her to set forth the facts which she contends free her from its mandates.

But plaintiff alleges that at certain times the waters of Baggs [7] Creek below her ditch and before reaching Cottonwood Creek if not taken by her, would sink and be lost. (She does not say whether the water would reach the Pierce ditch.) She therefore avers that Baggs Creek during that period of the year is not a tributary to Cottonwood. But she is precluded from maintaining this position. The decree determined that Baggs Creek is a tributary of Cottonwood Creek; that is an adjudicated fact, and evidence to the contrary will not be heard until a change in the condition subsequent to the decree has been shown. (*Howell* v. *Bent*, 48 Mont. 268, 137 Pac. 49.)

If it be true that there are times when the waters at the head of plaintiff's Baggs Creek ditch will be lost unless used by her, not being of sufficient quantity to reach to the ditch next lower upon the stream, her remedy is, in a proper proceeding for that purpose, to ask for a modification of the decree permitting her to use the water when those conditions obtain. Until modified in that respect she is bound by the decree as it is written.

As the complaint manifestly fails to state a cause of action for the reasons foregoing, it is not necessary to pass upon the other objections lodged against it by defendants.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.